**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

ANGELA KEITH,
on behalf of herself and others similarly situated,

                Plaintiff,                Case No.: 3:24-cv-729-jdp

HY CITE ENTERPRISES, LLC,

                Defendant.

---

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS ACTION SETTLEMENT**

---

**Introduction**

After a year of heavily contested litigation, and as a result of arm's-length negotiations under the supervision of an experienced mediator, the parties agreed to resolve this class action under the Telephone Consumer Protection Act ("TCPA"). Hy Cite Enterprises, LLC ("Defendant"), which does business as Royal Prestige, will create a non-reversionary, all-cash common fund in the amount of $4,750,000, from which participating Settlement Class Members will receive *pro rata* payments expected to be between $650 and $1,000 each (the "Settlement"). In addition, Defendant has undertaken additional actions to help ensure compliance with the TCPA.

Angela Keith ("Plaintiff") and her counsel firmly believe the Settlement constitutes a tremendous result in light of the risks of future litigation. Because the Settlement is fair, reasonable, adequate, and in the best interest of Settlement Class Members, Plaintiff respectfully requests that this Court enter an order preliminarily approving the Settlement, in the form agreed to by the parties. Defendant does not oppose the requested relief.

**Legal and Factual Background**

This class action arises under 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for "any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii);[1] *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012). Prior express consent is a complete defense to a TCPA claim. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

The gravamen of Plaintiff's complaint is that Defendant placed telephone calls to Plaintiff's cellular telephone number, in connection with which it delivered prerecorded voice messages, in an

---

[1] Internal citations and quotations are omitted, and emphasis is added, unless noted.

attempt to collect on a past-due account from someone Plaintiff does not know. *See generally* ECF No. 1. A full recitation of the facts underlying Plaintiff's claim is set forth in Plaintiff's motion for class certification and appointment of class counsel. ECF No. 16 at 4-8.

During the proposed class period of October 22, 2020 through September 10, 2025, Defendant placed calls, in connection with which it may have delivered a prerecorded voice message, to more than 22,000 unique telephone numbers that it designated in its records as a potential "wrong number," *i.e.*, telephone numbers associated with persons who may not have had an account with Defendant. Only a subset of these telephone numbers—17,902—is assigned to a cellular telephone service and thus potentially associated with Settlement Class Members here.

Defendant denies any wrongdoing and denies that it violated the TCPA.

### Summary of the Settlement

The Settlement resolves this matter on behalf of the following class ("Settlement Class"):

> All persons throughout the United States (1) to whom Hy Cite Enterprises, LLC placed a call, (2) directed to a telephone number assigned to a cellular telephone service, but not assigned to a Hy Cite Enterprises, LLC customer or accountholder, (3) in connection with which Hy Cite Enterprises, LLC used an artificial or prerecorded voice, (4) from October 22, 2020 through September 10, 2025.

To compensate Settlement Class Members, Defendant will create a non-reversionary, all-cash common fund in the amount of $4,750,000 ("Settlement Fund"). Settlement Class Members will receive compensation from the Settlement Fund after first deducting (i) the cost of notice to potential Settlement Class Members, and claims administration (estimated to be $115,987), (ii) litigation costs and expenses, for which Plaintiff will petition this Court (up to $15,000), (iii) reasonable attorneys' fees, calculated as a percentage of the Settlement Fund, for which Plaintiff will petition this Court (36% of the net Settlement Fund after deducting costs), and (iv) a service award to Plaintiff, for which she will petition this Court ($15,000) (collectively, the "Settlement Costs"). In addition, as a result of this litigation Defendant will implement practice changes to help

ensure it does not place robocalls to persons who are not its customers and who did not consent.

With respect to the requested attorneys' fees, Class Counsel will submit a detailed fee petition in advance of the deadline for Settlement Class Members to object. Consistent with this Court's requirements, Class Counsel also will submit their contemporaneous time entries. *See, e.g.*, *Allen v. Lanier, Inc.*, No. 22-cv-268-jdp, 2023 WL 3529512, at *4 (W.D. Wis. May 18, 2023) (Peterson, J.) ("Although counsel is relying on the percentage-of-recovery method to justify their fee request, this court requires a lodestar cross check, as it is entitled to do."). Of note, the requested fee of 36% of the net Settlement Fund is consistent with fee awards in TCPA class actions in this circuit. *See, e.g.*, *Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792, 795 (7th Cir. 2018) (approving attorneys' fees amounting to 36 percent of the first $10 million recovered); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (same); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) (awarding fees of 36% of settlement fund); *accord Jewell v. HSN, Inc.*, No. 19-cv-247-jdp, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020) (Peterson, J.) (awarding attorneys' fees amounting to 35% of net settlement fund in TCPA class action).

Each Settlement Class Member who submits a valid, approved claim will be entitled to a *pro rata* share of the Settlement Fund after deducting the Settlement Costs. It is estimated that each participating Settlement Class Member will receive between $650 and $1,000, depending on the number of valid claims submitted. A third-party class administrator will be responsible for mailing notice of the Settlement directly to potential Settlement Class Members, establishing and maintaining a dedicated website where Settlement Class Members may find relevant information, access important case documents, and submit claims, and processing Settlement Class Members' claims and requests for exclusion. To that end, the parties have selected Kroll Settlement Administration LLC ("Kroll") to act as the class administrator here.

Settlement Class Members will be afforded the opportunity to exclude themselves from the Settlement should they choose to do so. Likewise, any Settlement Class Member who wishes to object will be provided the opportunity to do so. Upon this Court's entry of a final judgment, Plaintiff and each non-excluded Settlement Class Member will release certain claims they have relating to artificial or prerecorded voice calls Defendant placed to their cellular telephones. The parties' settlement agreement, which contains all of the Settlement's terms, is filed concurrently. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

## Argument

**I.    This Court should certify the Settlement Class under Rule 23 for settlement purposes.**

Under Rule 23 of the Federal Rules of Civil Procedure, the party seeking class certification must satisfy the four requirements of Rule 23(a)—referred to as numerosity, commonality, typicality, and adequacy of representation—and, relevant here, the requirements of Rule 23(b)(3). Here, Plaintiff satisfies each of these requirements.

**A.    TCPA claims are well suited for class treatment.**

"Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). And this remains true for TCPA class actions like this one involving calls to wrong or reassigned cellular telephone numbers. *See, e.g.*, *Elliot v. Humana Inc.*, No. 3:22-cv-00329-RGJ, 2025 WL 1065755 (W.D. Ky. Apr. 9, 2025) (certifying a "wrong number" TCPA class over objection); *Samson v. United Healthcare Servs. Inc.*, No. 2:19-CV-00175, 2023 WL 6793973 (W.D. Wash. Oct. 13, 2023) (same); *Head v. Citibank, N.A.*, 340 F.R.D. 145 (D. Ariz. 2022) (same); *Wesley v. Snap Fin. LLC*, 339 F.R.D. 277 (D. Utah 2021) (same); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) (same); *Reyes v. BCA Fin. Servs., Inc.*, No. 16-24077-CIV-Goodman,

4

2018 WL 3145807 (S.D. Fla. June 26, 2018) (same), *decertified per agreement of the parties*, 2020 WL 1846165 (S.D. Fla. Mar. 18, 2020); *Lavigne v. First Cmty. Bankshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 WL 2694457 (D.N.M. June 5, 2018) (same); *West v. Cal. Servs. Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017) (same); *Johnson v. Navient Sols., Inc.*, 315 F.R.D. 501 (S.D. Ind. 2016) (same); *accord Brown v. DirecTV, LLC*, 562 F. Supp. 3d 590 (C.D. Cal. 2021) (denying a motion to decertify a "wrong number" TCPA class); *McMillion v. Rash Curtis & Assocs.*, No. 16-CV-03396-YGR, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017) (certifying "non-debtor" TCPA classes over objection).[2]

### B. The members of the Settlement Class are sufficiently numerous.

The first requirement of Rule 23(a) is that the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Where the class numbers at least 40, joinder is generally considered impracticable." *Simpson v. Safeguard Props., LLC*, No. 13-2453, 2014 WL 4652336, at *2 (N.D. Ill. Sept. 17, 2014); *see also Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969) ("Even if the class were limited to 40 stockholders, as proposed by the court below, that is a sufficiently large group to satisfy Rule 23(a) where the individual members of the class are widely scattered and their holdings are generally too small to warrant undertaking individual actions.").

Here, Defendant stipulated that the class is sufficiently numerous. *See* ECF No. 16-4. Moreover, the parties have identified nearly 18,000 telephone numbers that belong to potential Settlement Class Members. Even if some of the persons associated with these telephone numbers did not receive a prerecorded voice message from Defendant or are customers of Defendant,

---

[2] Underscoring their adequacy to serve as Class Counsel here, Plaintiff's counsel—Greenwald Davidson Radbil PLLC ("GDR") —was appointed as counsel for the respective classes in *Head*, *Wesley*, *Knapper*, *Reyes*, and *Johnson*.

common sense dictates that the Settlement Class likely contains thousands of members, thus satisfying numerosity. *See Toney v. Quality Res., Inc.*, 323 F.R.D. 567, 583 (N.D. Ill. 2018) (numerosity satisfied for TCPA class where "the class would include thousands of persons"); *CE Design Ltd. v. Cy's Crabhouse N., Inc.*, 259 F.R.D. 135, 140 (N.D. Ill. 2009) (numerosity met for TCPA class because "[t]he joinder of potentially thousands of plaintiffs—or even hundreds of them—would be impracticable").

### C. Questions of law and fact are common to the Settlement Class.

Rule 23(a)(2) requires the existence of common questions of law or fact. A common question is one where "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 673 (7th Cir. 2015).

This case presents a host of common questions, as Settlement Class Members' claims stem from the same factual circumstances. One such common question is whether Defendant has consent—an affirmative defense to TCPA liability—for calls made to wrong or reassigned cellular telephone numbers. *See, e.g.*, *Head*, 340 F.R.D. at 151 (certifying TCPA class and noting a common question: "Did Citibank call someone whom they were not authorized to call, and play a prerecorded voice during that call, in violation of the TCPA?"); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."). As a result, Plaintiff satisfies the commonality requirement.

### D. Plaintiff's claims are typical of Settlement Class Members' claims.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). This requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics

as the claims of the class at large." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Here, Plaintiff and the Settlement Class Members share the same essential claim, as they all received prerecorded voice messages from Defendant, despite not having an account with Defendant. For this reason, Plaintiff was harmed in the same way as each member of the Settlement Class, so her claims are typical of the Settlement Class's. *See Knapper*, 329 F.R.D. at 242-43 ("The Court finds that the typicality requirement is met. Here, Plaintiff is a not a customer of Defendant and alleges that Defendant did not have consent to call her before it dialed her phone number. . . . She alleges that the putative class members were also wrongly contacted by Defendant. . . . Thus, the nature of Plaintiff's claim is reasonably coextensive with the putative class members."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 252 (N.D. Ill. 2014) (typicality satisfied for TCPA class because "the named plaintiffs received the same type of call as the other class members").

### E. Plaintiff and her counsel will continue to fairly and adequately protect the interests of the Settlement Class.

Next, the Court must determine if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "To determine if the plaintiff has met the adequacy requirement of Rule 23(a)(4), the Court must ask whether the named Plaintiff: (1) has antagonistic or conflicting claims with other members of the class; (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation." *Quiroz v. Rev. Prod. Mgmt., Inc.*, 252 F.R.D. 438, 442 (N.D. Ill. 2008). "To be adequate, the class representative must maintain only an understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Id*. (quoting *Murray v. E\*Trade Fin. Corp.*, 240 F.R.D. 392, 398 (N.D. Ill. 2006)). The burden of establishing that the class representative meets this standard is "not difficult." *Murray v. New Cingular Wireless Serv., Inc.*, 232 F.R.D. 295, 300 (N.D. Ill. 2005).

7

As set forth above, Plaintiff's claims are aligned with those of the Settlement Class, so she has every incentive to vigorously pursue their claims, as she has done to date. *See* ECF No. 19 (Declaration of Angela Keith). In addition, Plaintiff retained the services of counsel who are well-versed in class action litigation, including nationwide TCPA class actions like this one. *See* Declaration of Michael L. Greenwald, filed concurrently.

What's more, proposed Class Counsel also satisfy the considerations of Rule 23(g) and should be appointed accordingly. *See generally id.*; *see also Jewell*, 2020 WL 4904427, at *2 (appointing GDR as co-Class Counsel in TCPA class action).

### F. Common questions predominate over any individualized issues.

Rule 23(b)(3) requires "that questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3). Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, "the common question among class members is whether they received calls fitting the description in the class definition[]." *Birchmeier*, 302 F.R.D. at 253; *see also Gehrich*, 316 F.R.D. at 226 ("common questions [including whether the defendant placed prerecorded calls to cellular telephone numbers] are the main questions in this case, they can be resolved on a class-wide basis without any individual variation, and they predominate over any individual issues"). Moreover, as the class is limited to those who received prerecorded voice messages from Defendant but who did not have an account with Defendant, there are no individualized consent issues that predominate. *See Birchmeier*, 302 F.R.D. at 253 ("To put it another way, whether a particular defendant is liable is not an *individual* issue among class members. The same applies to defendants' argument that the

8

Court would have to determine whether any defenses apply; they have not persuasively argued that defenses can or would vary among class members.") (emphasis in original).

### G. Class treatment is superior to other available methods for the fair and efficient adjudication of the Settlement Class's claims.

Rule 23(b)(3) additionally requires a determination that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). To do so, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.

From the outset, litigating TCPA claims as part of a class action is generally superior to litigating them in successive individual lawsuits. *See Reliable Money Ord., Inc. v. McKnight Sales Co.*, 281 F.R.D. 327, 339 (E.D. Wis. 2012), *aff'd*, 704 F.3d 489 (7th Cir. 2013) ("[M]any courts have found class actions to be an appropriate method of adjudication of TCPA violations."); *Green v. Serv. Master On Location Servs. Corp.*, No. 07-4705, 2009 WL 1810769, at *3 (N.D. Ill. June 22, 2009) ("[R]esolution of the issues [under the TCPA] on a classwide basis, rather than in thousands of individual lawsuits (which in fact may never be brought because of their relatively small individual value), would be an efficient use of both judicial and party resources."). This is, in part, because no one member of a TCPA class has an interest in controlling the prosecution of the action. Here, for example, this is true because Settlement Class Members' claims are identical, they arise from the same standardized conduct, and they result in uniform damages:

> The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each

9

> case, individual litigation would not promote efficiency or reduce litigation costs. This is particularly so for claims that all stem from the same cause of action and involve common issues. Therefore, the Court finds that a class action is a superior method to adjudicate this matter.

*Knapper*, 329 F.R.D. at 247.

Further, absent a class action, thousands of potential claims like Plaintiff's—all of which stem from Defendant's identical conduct in delivering prerecorded voice messages to persons without accounts with it—likely will go un-redressed. *See Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute."). A class action therefore is the superior method to adjudicate all aspects of this controversy.

## II. This Court should preliminarily approve the settlement as fair, reasonable, and adequate under Rule 23(e).

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998) ("Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources."). While settlements are favored, Rule 23(e) requires the Court to make a preliminary determination of fairness:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary

10

> determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

Then, after concluding its preliminary fairness evaluation, certifying the Settlement Class for settlement purposes, and directing the issuance of class notice, the Court holds a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* MANUAL FOR COMPLEX LITIGATION § 21.633-34.

Preliminary approval requires only that this Court evaluate whether the proposed settlement "is within the range of possible approval." *Armstrong*, 616 F.2d at 314. Nevertheless, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Seventh Circuit identified a number of factors used to assess whether a settlement proposal is fundamentally fair, reasonable, and adequate: (1) the strength of the plaintiff's case compared to the terms of the proposed settlement; (2) the likely complexity, length and expense of continued litigation; (3) the amount of opposition to settlement among affected parties; (4) the opinion of competent counsel; and (5) the stage of the proceedings and the amount of discovery completed. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006).

As well, Rule 23(e) requires consideration of several additional factors, including whether the class representative and class counsel have adequately represented the class, and whether the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e). Each relevant factor supports the conclusion that the Settlement is fundamentally fair, adequate, and reasonable.

### A. The strengths of Plaintiff's case and the risks inherent in continued litigation and securing class certification favor preliminary approval.

"[A]n integral part of the strength of a case on the merits is a consideration of the various risks and costs that accompany continuation of the litigation." *Donovan v. Estate of Fitzsimmons*,

778 F.2d 298, 309 (7th Cir. 1985), *on reh'g sub nom. Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682 (7th Cir. 1986). Here, significant risks and costs lay ahead, as the parties vehemently disagreed about the merits of the TCPA claims at issue and the propriety of class certification in contested litigation. Absent settlement, Defendant was certain to oppose the certification of any litigation class—as opposed to the Settlement Class here presented. Indeed, certification of a TCPA class over objection is no guarantee. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (denying motion for class certification in TCPA matter); *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same). Defendant also would have opposed summary judgment for Plaintiff and likely sought summary judgment for itself. Potential discovery battles also loomed. Trial remained a possibility, and likely appeals thereafter.

Additional litigation would have been costly, time-consuming, and ultimately risky. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("The costs associated with discovery in complex class actions can be significant."). The complex issues encompassed by this action, together with the length of time and expense likely necessary to resolve this case by continued litigation, weigh in favor of preliminary approval. *See Vought v. Bank of Am., N.A.*, 901 F. Supp. 2d 1071, 1092 (C.D. Ill. 2012) ("Overall, the significant complexity of the issues this case presents, the increased length of time that would be necessary to resolve this case by continued litigation, and the corresponding dramatic increase in costs weigh in favor of approving the proposed settlement.").

### B. The stage of these proceedings and experience and views of counsel favor preliminary approval.

During the pendency of this litigation, the parties were able to assess the relative strengths and weaknesses of their respective positions, and to compare the benefits of the proposed settlement

to further litigation. The parties engaged in written discovery and depositions, exchanged document productions, and Plaintiff served an expert report. Plaintiff also filed her motion for class certification and supporting documents. ECF Nos. 16-21. The parties then engaged in a full-day mediation with an experienced class action mediator—Seamus Duffy[3]—which led to the agreement here.

And both Plaintiff and her counsel firmly believe that the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class. *See Swift v. Direct Buy, Inc.*, Nos. 2:11–CV–401–TLS, 2:11–CV–415–TLS, 2:11–CV–417–TLS, 2:12–CV–45–TLS, 2013 WL 5770633, at *7 (N.D. Ind. Oct. 24, 2013) ("Third, as the Court has already noted, the 'opinion of competent counsel' supports a determination that the settlement is fair, reasonable, and adequate under Rule 23.").

### C. The substantial cash relief afforded by the Settlement favors preliminary approval. Defendant also will change its business practices.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the Court to second-guess the negotiated resolution of the parties. As the Ninth Circuit wrote:

> The court's intrusion upon what is otherwise a private, consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

And as the Northern District of Indiana explained in approving a class action settlement in *Swift*:

> Although $20 (the expected pro rata award of the net settlement fund for each class member who filed a claim notice) is not significant in a vacuum, "a dollar today is worth a great deal more than a dollar ten years from now," *Reynolds*, 288 F.3d at 284, and a major benefit of the settlement is that class members will obtain these

---

[3] https://www.seamusduffymediation.com/ (last visited Nov. 10, 2025)

>benefits much more quickly than had the parties not settled. The parties have informed the Court that this case, were it to proceed, would face numerous challenges such that, even if the case reached trial, the class members would not receive benefits for many years, if they received any at all. Faced with the prospect of receiving no recovery—both because DirectBuy might have succeeded in any aspect of what would have been a vigorous defense absent settlement and because DirectBuy had no unencumbered assets—Class Counsel is confident that payment of up to $20.00 per household is an excellent result in this litigation.

2013 WL 5770633, at *5.

Here, Defendant will pay $4,950,000 into the non-reversionary Settlement Fund to resolve this matter, or about $265 per potentially affected cellular telephone number. Despite the obstacles Plaintiff faced, she and her counsel negotiated a settlement that exceeds many other TCPA class action settlements nationwide. *See, e.g.*, *Wesley v. Snap Fin. LLC*, No. 2:20-cv-00148-RJS-JCB, 2023 WL 1812670 (D. Utah Feb. 7, 2023) ($77.10 per potentially affected telephone number); *Jackson v. Discover Fin. Servs., Inc.*, No. 1:21-cv-04529 (N.D. Ill. 2023) (approximately $10.75 per potential member); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 WL 1794559 (E.D. Mo. Feb. 7, 2023) ($6.42 per potentially affected telephone number); *Lucas v. Synchrony Bank*, No. 4:21-cv-70-PPS, ECF No. 47 (N.D. Ind. Nov. 18, 2022) (approximately $13 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at *2 (M.D. Fla. Apr. 2, 2019) ($7 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[4]

---

[4] *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 WL 6908118 (M.D. Fla. Nov. 22, 2016) ($5.55); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63); *Duke v. Bank of Am., N.A.*, No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15).

And on a per-claimant basis, the Settlement recovery is expected to exceed numerous other recently approved TCPA class action settlements. Plaintiff's counsel estimates—based on the likely number of *bona fide* Settlement Class Members[5]—that after deducting the Settlement Costs, participating Settlement Class Members will each receive between $650 and $1,000, or more—a superb result by any measure. *Accord Miles*, 2023 WL 1794559 (approximately $157 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action).

Underscoring the excellent nature of the Settlement at bar is that the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-TCPA claimant recovery—a small fraction of the expected recovery here—as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017). The same is true here.

What's more, Defendant will undertake additional efforts to help ensure that it does not place calls with an artificial or prerecorded voice to persons who are not its customers.

In the end, the Settlement constitutes an objectively favorable result for Settlement Class Members that outweighs the possibility of future relief after protracted and expensive litigation.

### D. The remaining Rule 23(e)(2) factors support preliminary approval.

Finally, consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. Rule 23(e)(2) requires courts to consider whether (A) the class representative and class

---

[5] Because this case involves prerecorded voice messages delivered to alleged wrong numbers, the true number of Settlement Class Members who received prerecorded voice messages from Defendant despite not having an account, is unknown. For this reason, Settlement Class Members must submit a short, straightforward claim form to participate in any recovery.

counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[6] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as that the proposal was negotiated at arm's length with the assistance of an experienced neutral, and that the relief provided to the Settlement Class compares favorably to other TCPA settlements—are subsumed within the above discussion of the *Synfuel Techs.* factors. Beyond that, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See* ECF No. 19. She reviewed her pleadings, regularly communicated with her counsel regarding case strategy, responded to discovery requests, searched for and produced pertinent documents, assisted with mediation, and made all necessary decisions required of her in the best interests of Settlement Class Members. *Id.*[7] In addition, as noted above, the requested attorneys' fees are in line with Seventh Circuit precedent, and are further justified by the substantial relief afforded by the Settlement.

Finally, the Settlement treats Settlement Class Members equitably relative to each other. All Settlement Class Members have the same legal claims, and each participating Settlement Class Member thus will receive an equal portion of the Settlement Fund after deducting the Settlement

---

[6] The only operative agreement between the parties is the Settlement Agreement.

[7] For her efforts on behalf of the Settlement Class, Plaintiff will seek a service award of $15,000. *See, e.g.*, *Johnson v. Navient Sols., Inc.*, No. 1:15-cv-00716-LJM-MLD, Doc. 177 at 5 (S.D. Ind. July 13, 2017) (approving $25,000 service award in TCPA class settlement); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-cv-8285 (N.D. Ill. Oct. 21, 2015), Doc. 93 ¶ 18 (same).

Costs. Moreover, the release affects each Settlement Class Member in the same way, as everyone will release the same claims. As such, this factor supports preliminary approval. *See Cornelius v. Deere Credit Servs., Inc.*, No. 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *2 (S.D. Ga. Feb. 13, 2025) ("In addition, because each participating Settlement Class Member will receive the same recovery, the settlement treats class members equitably relative to one another."); *Vu v. I Care Credit, LLC*, No. 17-cv-04609 RAO, 2022 WL 22871480, at *11 (C.D. Cal. Nov. 4, 2022) ("Here, each member had to submit the same claim form to receive a distribution from the settlement fund and each member who submitted a claim form will receive an equal distribution. As the class members' TCPA claims are based on the same fax advertisements, equal distributions are fair.").

### III. The proposed notice program is industry standard in TCPA class actions like this one and complies with Rule 23.

Pursuant to Rule 23(e), a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, Kroll. Through the notice program, Kroll will use all reasonable efforts to provide direct mail notice to potential Settlement Class Members, in the forms attached as exhibits to the Settlement Agreement. The proposed notice plan and "method of identifying class members is reliable and constitutes industry standard best practices in wrong number class actions under the TCPA." *Cornelius*, 2025 WL 502089, at *2 (approving notice plan in TCPA class action identical to the proposed notice plan here).

To start, and consistent with the declaration of Carla A. Peak, *see* ECF No. 21, Kroll has

identified the telephone numbers Defendant notated as potential wrong numbers that are assigned to a cellular telephone service. Next, Kroll will perform a reverse lookup process to identify names and addresses of those persons associated with potentially impacted cellular telephone numbers. Kroll will then send direct mail notice by postcard, with a detachable claim form, to potential Settlement Class Members, where possible.

Separately, Kroll will establish a dedicated settlement website where Settlement Class Members can review relevant documents and submit claims. To submit a valid claim, a Settlement Class Member must state that he or she received one or more prerecorded voice messages from Defendant on his or her cellular telephone during the class period, and that he or she does not have an account with Defendant.

The ultimate goal of the notice program is to make it as convenient as possible for deserving Settlement Class Members to learn of, and participate in, the Settlement. *See, e.g.*, *Williams*, 2019 WL 1450090, at *5 (approving similar notice plan in a TCPA class action). The subject notice program, therefore, complies with Rule 23 and due process. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also Bonoan v. Adobe, Inc.*, No. 19-1068, 2020 WL 6018934, at *2 (N.D. Cal. Oct. 9, 2020) ("This Court approves the form and substance of the proposed notice of the class action settlement, which includes postcard notice, publication notice, a physical claim form, and the question-and-answer notice and online claim form, which will appear on the dedicated settlement website. To reach potential class members, KCC will perform reverse look-ups of available telephone numbers to identify persons who will receive direct mail notice. KCC will utilize established third-party vendors to obtain contact information for potential class members in a manner consistent with industry standard in wrong number TCPA class actions.").

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order—agreed to by

the parties—certifying the Settlement Class for settlement purposes; preliminarily approving the Settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative and Plaintiff's counsel as Class Counsel; approving and directing notice to Settlement Class Members in the form provided in the parties' Settlement Agreement; and setting a fairness hearing. The parties respectfully request that the Court conduct the fairness hearing by remote means so that Settlement Class Members may more easily attend, should they choose to do so.

Dated: November 10, 2025        /*s/ Michael L. Greenwald*
                                Michael L. Greenwald
                                James L. Davidson
                                GREENWALD DAVIDSON RADBIL PLLC
                                5550 Glades Road, Suite 500
                                Boca Raton, Florida 33431
                                Tel: (561) 826-5477
                                mgreenwald@gdrlawfirm.com
                                jdavidson@gdrlawfirm.com

                                *Counsel for Plaintiff and proposed Class Counsel*