**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

ANGELA KEITH,
on behalf of herself and others similarly situated,

Plaintiff, Case No.: 3:24-cv-729-jdp

HY CITE ENTERPRISES, LLC,

Defendant.

---

**PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, EXPENSES, AND A SERVICE AWARD**

---

## Introduction

Because of Angela Keith's and her counsel's substantial efforts in this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, Hy Cite Enterprises, LLC ("Defendant") will create a non-reversionary, all-cash $4.75 million common fund to compensate members of the settlement class ("Settlement Class Members"). After more than a year of heavily contested litigation, and despite numerous risks and obstacles along the way, participating Settlement Class Members are expected to receive payments between of up to $1,000—or more.

In line with the Court-approved class notice, Court-appointed Class Counsel seek an award of attorneys' fees of $1,652,509.08, which is less than 34.8% of the total common fund, or 36% of the net common fund after deducting the costs of class notice and administration, the requested service award, and Class Counsel's costs and litigation expenses.[1] As well, Class Counsel respectfully request reimbursement of their costs and litigation expenses totaling $11,234.01. Additionally, Ms. Keith seeks a service award of $15,000.

These requests are reasonable, justified, and in line with awards approved in TCPA class actions in this district and elsewhere nationwide. Moreover, following notice to Settlement Class Members, to date, no Settlement Class Member has objected to any part of the settlement or the requests for attorneys' fees, costs, expenses, or a service award. The deadline for objections is July 8, 2026.[2]

---

[1] Costs of class notice and settlement administration are expected to be $133,463. Subtracting notice-related costs, $11,234.01 for Class Counsel's costs and litigation expenses, and the requested service award of $15,000, leaves a net common fund of $4,590,302.99.

[2] While this Court set an August 25, 2026 deadline for the filing of this motion, ECF No. 30 at 8, Ms. Keith is submitting her motion more than 30 days prior to the deadline for Settlement Class Members to object or exclude themselves so that Settlement Class Members can be fully informed when making their decisions. Ms. Keith will file her motion for final approval of the class action settlement by the August 25, 2026 deadline, after all claims, exclusions, and objections are received and accounted for. *Id*.

Of note, there is no "clear sailing" provision here—Defendant has not agreed to Class Counsel's request for an award of attorneys' fees, costs, and expenses. As such, Defendant was free to oppose these requests. Moreover, this Court's approval of the requested awards is not a condition of the settlement.

**Summary of the Settlement**

This class action arises under 47 U.S.C. § 227(b)(1)(A)(iii), which makes it unlawful for "any person . . . to make any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to . . . cellular telephone service. . . ." 47 U.S.C. § 227(b)(1)(A)(iii); *accord Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012). Prior express consent is a complete defense to a TCPA claim. *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1149 (N.D. Ill. 2014).

The gravamen of Ms. Keith's complaint is that Defendant placed telephone calls to her cellular telephone number, in connection with which it delivered prerecorded voice messages, in an attempt to collect on a past-due account from someone Ms. Keith does not know. *See generally* ECF No. 1. A full recitation of the facts underlying Ms. Keith's claim is set forth in her motion for class certification and appointment of class counsel. ECF No. 16 at 4-8.

During the proposed class period of October 22, 2020 through September 10, 2025, Defendant placed calls, in connection with which it may have delivered a prerecorded voice message, to approximately 18,000 unique telephone numbers that it designated in its records as a potential "wrong number," *i.e.*, telephone numbers associated with persons who *may* not have had an account with Defendant. Importantly, this figure is the maximum number of *potential* Settlement Class Members. The parties estimate that the number of *likely* Settlement Class Members "is fewer than 6,500." ECF No. 27 at 4, § 4.2 (Class Action Settlement Agreement and Release). Defendant denies any wrongdoing and denies that it violated the TCPA.

To compensate Settlement Class Members, Defendant will create a non-reversionary, all-cash common fund in the amount of $4.75 million. After deducting the requested attorneys' fees, costs, and expenses, as well as notice and administration costs and a service award to Ms. Keith, participating Settlement Class Members are expected to receive significant payouts of up to $1,000 or more each. As this Court noted in preliminarily approving the settlement, the expected recovery here "is higher than most similar TCPA class action settlements." ECF No. 30 at 5 (collecting cases); *id*. ("And the parties represent that the actual recovery for class members who file claims is likely to be between $650 and $1000, which is more than the usual statutory damages per call and significantly more than most TCPA settlement classes.").

In addition, as a result of this litigation Defendant will implement practice changes to help ensure it does not place robocalls to persons who are not its customers. These measures benefit not only Settlement Class Members, but will reduce unwanted calls placed to third parties in the future.

In sum, the settlement constitutes a tremendous result that outpaces other TCPA settlements, further justifying the awards sought here. *See, e.g.*, *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) (finding that the cash recovery of $24 per claimant in a TCPA class action—far less than the recovery here—is "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter").[3]

## Argument

### I. A fee award of less than 34.8% of the total settlement fund—and 36% of the net settlement fund—is reasonable and justified.

The Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). To

[3] Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

that end, the Seventh Circuit "favors the percentage-of-the-fund fee in common fund cases because it provides the best hope of estimating what a willing seller and a willing buyer seeking the largest recovery in the shortest time would have agreed to *ex ante*." *In re FedEx Ground Package Sys., Inc. Emp't Practices Litig.*, 251 F. Supp. 3d 1225, 1236 (N.D. Ind. 2017).

Here, Class Counsel seek an award of attorneys' fees of $1,652,909.08, which is equal to less than 34.8% of the total common fund, and 36% of the net common fund. This request is supported by applicable case law both within and outside of the Seventh Circuit, and with respect to class actions generally, as well as those under the TCPA specifically.

**A. District courts in this circuit agree upon the percentage-of-the-fund method to calculate attorneys' fee awards in common fund cases like this one.**

According to the Seventh Circuit, "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). "Because the market-price estimation is inherently conjectural, district courts have discretion to use either the percentage method, which awards fees as a percentage of the common fund, or the 'lodestar' method, which awards fees based on the attorneys' hours and billing rates . . . ." *In re TikTok, Inc., Consumer Privacy Litig.*, 617 F. Supp. 3d 904, 939 (N.D. Ill. 2022).

In a TCPA class action like here, Judge Holderman reasoned that the percentage-of-the-fund method is "more likely to yield an accurate approximation of the market rate," and that, "had an arm's length negotiation been feasible, the court believes that the class would have negotiated a fee arrangement based on a percentage of the recovery, consistent with the normal practice in consumer class actions." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015); *see also Johnson v. Navient Sols., Inc., f/k/a Sallie Mae, Inc.*, No. 1:15-cv-0716-LJM, Doc.

177 (S.D. Ind. July 13, 2017) (approving fee application for percentage of the common fund in TCPA class action); *Charvat v. Valente*, No. 12-5746, 2019 WL 5576932, at *11 (N.D. Ill. Oct. 28, 2019) ("The Court agrees with Class Counsel that using the percentage-of-recovery method is preferable to the lodestar method in this instance."); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 501 (N.D. Ill. 2015) ("The Court agrees with Kolinek's counsel that the fee award in this case should be calculated based on a percentage-of-the-fund method."). Underlying Judge Holderman's rationale: "An *ex ante* agreement based on lodestar requires a client to monitor counsel, and the class-member 'clients' here had little incentive to do so." *Capital One*, 311 F.R.D. at 501.

Indeed, the class members in *Capital One* numbered in the millions, each with minimal prospective relief, so "[t]he class would not have negotiated a compensation scheme that required a level of monitoring the class members were not interested in or capable of providing." *Id.*; *see also Kolinek*, 311 F.R.D. at 501 (noting that a large class of "lightly-injured plaintiffs" would be unlikely "to monitor counsel and ensure that counsel are working efficiently on an hourly basis," as required by the lodestar model). "Instead, the class would have chosen the compensation scheme that required the least monitoring to align the incentives of the class and its counsel—the percentage method." *Capital One*, 80 F. Supp. 3d at 795.

And as Judge Alonso echoed:

> It is hard to imagine the class agreeing each to kick in an equal share of, say, $300 per hour multiplied by the number of hours it would take the attorneys to achieve a victory or settlement or, worse yet, a loss in this case, given that each stood to gain only a little. Much easier to imagine *ex ante* is the members' agreeing to a contingency fee to incentivize the attorneys to maximize the award to the class members.

*Abante Rooter & Plumbing, Inc. v. Oh Ins. Agency*, No. 15-9025, 2019 WL 10248700, at *4 (N.D. Ill. Dec. 10, 2019) ("agree[ing] that a reasonable class of plaintiffs making an *ex ante* bargain would have agreed to pay the attorneys one third of the recovery").

This is exactly what occurred here as, at the outset of the case, Ms. Keith entered into a contingent fee agreement with Class Counsel that limited attorneys' fees to 35% of the total recovery. *See* Declaration of Michael L. Greenwald in Support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, and a Service Award ("Greenwald Decl.") at ¶¶ 81-82; Declaration of Angela Keith in Support of Her Motion for Attorneys' Fees, Costs, Expenses, and a Service Award ("Keith Decl.") at ¶¶ 47-48.

And approximating the market rate through the percentage method can be informed by several factors, including: (1) the actual agreements between the parties as well as fee agreements reached by sophisticated entities in the market for legal services; (2) the risk of non-payment at the outset of the case; (3) the caliber of class counsel's performance; (4) the amount of work necessary to resolve the litigation; (5) the stakes of the case; and (6) information from other cases, including fee awards in comparable cases. *See In re Broiler Chicken Antitrust Litig.*, No. 16-8637, 2022 WL 6124787, at *2 (N.D. Ill. Oct. 7, 2022).

The Seventh Circuit has recognized that "most suits for damages in this country are handled on the plaintiff's side on a contingent-fee basis" and that the "typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998).

**B. An award of attorneys' fees of less than 34.8% of the total common fund, or 36% of the net common fund, is in line with awards in class actions in this Circuit, including those under the TCPA.**

Looking first to comparable cases, Judge Kennelly in *Kolinek* found that the "market rate" for legal services in a TCPA class action was 36% of the net settlement fund "based on the degree of effort the attorneys would need to put in, the likelihood of success, and the risks associated with undertaking class representation . . . ." 311 F.R.D. at 502-03. It therefore follows that the requested fee here is consistent with awards in TCPA class litigation in this circuit. *See, e.g.*, *Patterson v. OptumRx*, No. 1:24-cv-00689-TWP-KMB, 2026 WL 881674, at *3 (S.D. Ind. Mar. 31, 2026) (fees

amounting to 36% of net settlement fund in TCPA class action); *Summerton v. Goldco Direct LLC*, No. 3:23-cv-00238-WAC, 2026 WL 836962, at *2 (W.D. Wis. Mar. 23, 2026) (Conley, J.) (awarding fees of one-third of total common fund in TCPA class action, plus expenses); *Fralish v. Ceteris Portfolio Servs., LLC*, No. 3:22-CV-176 DRL-MGG, 2023 WL 6057378, at *4 (N.D. Ind. Sept. 15, 2023) (fees amounting to 36% of net settlement fund in TCPA class action); *Lucas v. Synchrony Bank*, No. 4:21-CV-70-PPS/JEM, 2023 WL 3143816, at *2 (N.D. Ind. Apr. 25, 2023) (approving an award of attorneys' fees amounting to 36% of the net common fund in TCPA class action); *Abante Rooter & Plumbing*, 2019 WL 10248700, at *4 (awarding $3,500,000, one-third of total common fund); *Simms v. ExactTarget, LLC*, No. 14-737, 2018 WL 11416085, at *10 (S.D. Ind. Oct. 2, 2018) (awarding $2,073,750, 35% of net settlement fund), *report and recommendation adopted,* No. 14-737, 2018 WL 11416084 (S.D. Ind. Oct. 19, 2018); *Leung v. XPO Logistics, Inc.*, 326 F.R.D. 185, 202 (N.D. Ill. 2018) (awarding fees of 33.3% of $6,691,679 net settlement fund); *Aranda v. Caribbean Cruise Line, Inc.*, No. 12-4069, 2017 WL 1369741, at *9 (N.D. Ill. Apr. 10, 2017) (approving sliding scale for fees that included 36% of the first $10 million in TCPA class action), *aff'd sub nom. Birchmeier v. Caribbean Cruise Line, Inc.*, 896 F.3d 792 (7th Cir. 2018); *Capital One*, 80 F. Supp. 3d at 807 (same); *Kolinek*, 311 F.R.D. at 503 (approving fees of $2,824,200, which is 36% of net common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 12-215, 2014 WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving $1,633,333.33, 36.3% of settlement's quantifiable value).[4]

---

[4] *See also, e.g.*, *Roberson v. Maestro Consulting Servs., LLC*, No. 3:20-CV-00895-NJR, 2024 WL 4785359, at *1 (S.D. Ill. Nov. 14, 2024) ("Attorneys' fees in the amount of 40% of the Gross Settlement Amount of $2,800,000.00 shall be paid by the Settlement Administrator, Analytics Consulting, LLC, to Class Counsel[.]"); *Levey v. Concesionaria Vuela Compañía de Aviación, S.A.P.I. de C.V.*, No. 20-cv-2215 (JRB), 2024 WL 4906150, at *3 (N.D. Ill. Nov. 4, 2024) (awarding 36% of the Settlement Funds less notice and administration costs); *Roberts v. Graphic Packaging Int'l, LLC*, No. 3:21-cv-00750-DWD, 2024 WL 3373780, at *5 (S.D. Ill. July 11, 2024) (36% of the net settlement fund in BIPA case); *Guzman v. Nat'l Packaging Servs. Corp.*, No. 19-CV-1722-PP,

Underscoring the reasonableness of the fee award sought here, this Court approved an award of attorneys' fees amounting to 35% of the net common fund in a similar class action under the TCPA. *Jewell v. HSN, Inc.*, No. 19-cv-247-jdp, 2020 WL 4904427, at *3 (W.D. Wis. Aug. 19, 2020) (Peterson, J.) ("Class Counsel's request for an award of attorneys' fees of 35 percent of the Settlement Fund, after deducting class notice and administration costs of $11,599.78, Class Counsel's reasonable litigation costs and expenses, and Plaintiff's incentive award, is approved.").[5]

**C. The award sought here also is consistent with awards of attorneys' fees in similar TCPA class actions nationwide.**

Comparable TCPA cases outside the Seventh Circuit similarly support Class Counsel's request as district courts assessing attorneys' fees in connection with TCPA class recoveries routinely approve awards upwards of one-third of the total common fund. *See, e.g.*, *Johnson v. Comodo Grp., Inc.*, No. 16-4469, 2026 WL 296417, at *8 (D.N.J. Feb. 4, 2026) (awarding fees of 40% of TCPA common fund and finding that "[a] forty percent contingent fee is routinely negotiated in the open market."); *Johnson v. United Healthcare Servs., Inc.*, No. 5:23-cv-00522-GAP-PRL, 2025 WL 1909337, at *4 (M.D. Fla. July 10, 2025) (awarding fees of one-third of total settlement fund); *Daugherty v. Credit Bureau Servs. Ass'n*, No: 4:23-cv-01728, 2025 WL 1618354, at *5 (S.D. Tex. June 6, 2025) (same); *Cornelius v. Deere Credit Servs., Inc.*, No.: 4:24-cv-25-RSB-CLR, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) (same); *Head v. Citibank, N.A.*, No. CV-18-08189-PCT-ROS, 2025 WL 226660, at *4 (D. Ariz. Jan. 14, 2025) (awarding fees of one-third of $29.5 million fund); *Boger v. Citrix Sys., Inc.*, No. 19-cv-01234-LKG, 2023 WL 3763974, at *13 (D. Md. June 1, 2023) (awarding fees of one-third of total settlement fund); *Miles v. Medicredit, Inc.*, No. 20-1186,

2022 WL 2657261, at *5 (E.D. Wis. July 8, 2022) ("The award is the equivalent of 36% of the class recovery.").

[5] Greenwald Davidson Radbil PLLC ("GDR")—Class Counsel here—was also Class Counsel in *Jewell*.

2023 WL 1794559, at *4 (E.D. Mo. Feb. 7, 2023) (same); *Wesley v. Snap Fin. LLC*, No. 20-148, 2023 WL 1812670, at *3 (D. Utah Feb. 7, 2023) (same); *Hanley v. Tampa Bay Sports & Entm't LLC*, No. 19-550, 2020 WL 2517766, at *6 (M.D. Fla. Apr. 23, 2020) (awarding "a slight increase from the one-third benchmark"); *Sheean v. Convergent Outsourcing, Inc.*, No. 18-11532, 2019 WL 6039921, at *4 (E.D. Mich. Nov. 14, 2019) (awarding one-third of total TCPA and FDCPA common funds); *Gonzalez v. TCR Sports Broad. Holding, LLP*, No. 18-20048, 2019 WL 2249941, at *6 (S.D. Fla. May 24, 2019) (awarding one-third of common fund); *Todd S. Elwert, Inc., DC v. All. Healthcare Servs., Inc.*, No. 15-2673, 2018 WL 4539287, at *4 (N.D. Ohio Sept. 21, 2018) (same); *Martinez v. Medicredit, Inc.*, No. 16-1138, 2018 WL 2223681, at *5 (E.D. Mo. May 15, 2018) (same); *Prater v. Medicredit, Inc.*, No. 14-159, 2015 WL 8331602, at *4 (E.D. Mo. Dec. 7, 2015) (same); *Hageman v. AT&T Mobility LLC*, No. 13-50, ECF No. 68 (D. Mont. Feb. 11, 2015) (same); *Vendervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (same).

### D. Ms. Keith and her counsel entered into a contingent attorneys' fee agreement, so the risk of non-payment to counsel was substantial.

Turning next to the fee agreement between Ms. Keith and her counsel and the risk of non-payment at the outset of the case, it is important to recognize that Ms. Keith entered into a contingent attorneys' fee agreement with her counsel. Greenwald Decl., at ¶¶ 80-84. The agreement permitted Class Counsel to apply to this Court for an award of attorneys' fees in the event that a common fund was established for the benefit of the class, limited to 35% of the total fund. *Id.*, ¶¶ 81-82; Keith Decl., ¶ 48. Conversely, without any recovery, counsel would be paid nothing for their efforts, nor reimbursed for their expenditures, no matter their investment of costs and time in this matter.

That the attorneys' fee arrangement in this case was contingent "weighs in favor of the requested attorneys' fees award, because '[s]uch a large investment of money [and time] place[s] incredible burdens upon . . . law practices and should be appropriately considered.'" *In re Thornburg*

*Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012); *see also In re Broiler Chicken*, 2022 WL 6124787, at *3 ("A substantial award is warranted here as a proper incentive for high quality counsel to take on complex cases, requiring a massive investment of time and money, with such a high risk of non-payment.").

Indeed, even in ordinary cases "uncertain is the outcome," and the corresponding risk taken by counsel in connection with contingent fee arrangements—no assurance of payment—warrants a higher percentage of the fund. *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, No. 04-3066, 2008 WL 11234103, at *3 (N.D. Ga. Mar. 4, 2008); *see also In re TikTok*, 617 F. Supp. 3d at 941 ("Larger contingency fees are generally needed to persuade lawyers to take riskier cases because there is a lower chance that they will receive anything at the end.").

And in the context of class actions, the inherent risk is multiplied:

> In undertaking to prosecute this complex case entirely on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. The risks are inherent in financing and prosecuting complex litigation of this type, but Class Counsel undertook representation with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Only the most experienced plaintiffs' litigation firms would risk the time and expense involved in bringing this Action in light of the possibility of a recovery at an uncertain date, or of no recovery at all.

*Simpson v. Citizens Bank*, No. 12-10267, 2014 WL 12738263, at *7 (E.D. Mich. Jan. 31, 2014).

Correspondingly, the fee agreement between Ms. Keith and her counsel, coupled with the risk that Class Counsel have litigated this case for nearly two years without receiving any payment for their efforts under that agreement, strongly supports the requested fee award.

**E. This case brought significant risks, including the challenging class-related questions underlying this matter.**

In the *Capital One* litigation, Judge Holderman performed an in-depth analysis of the risks associated with TCPA litigation to determine proper awards of attorneys' fees in TCPA class cases:

> Class Counsel in this case faced a variety of serious obstacles to success in bringing the lawsuit, and faced the real prospect of recovering nothing. First, it was quite possible that the discovery may have revealed that many class members acquiesced to receiving calls on their cell phones when they agreed to their cardholder agreements with Capital One. Some customers provided Capital One with their cell phone numbers as their primary contact numbers, arguably waiving any right not to receive debt-collection calls on their cell phone from Capital One. Second, at the outset of the litigation there was a serious question whether the Plaintiffs' claims could meet Rule 23's manageability requirement given that Capital One would have to review its records to determine which class members provided consent through cardholder agreements, which class members actually provided their cell phone numbers to Capital One, and whether each class member actually owned their cell phone number at the time Capital One called it using an autodialer. Third, as Capital One has noted throughout this litigation, there are presently petitions before the FCC urging the FCC to (1) revise the TCPA's definition of "automatic telephone dialing system" to exclude dialers like those used by Capital One, and (2) provide a safe harbor for all calls that Capital One inadvertently made to wrong numbers. Consequently, the longer this litigation were to continue, the longer Plaintiffs would be exposed to the possibility that the FCC would take action that might extinguish Plaintiffs' claims.

80 F. Supp. 3d at 805.

Many of these risks, such as evolving interpretations of the TCPA, remain true today. To be sure, Ms. Keith faced a number of significant hurdles. For example, Defendant strongly disputed that a class could be certified for litigation purposes. Worth mentioning, several district courts have refused to certify TCPA matters. *See, e.g.*, *Abboud v. Circle K Stores Inc.*, No. 23-cv-01683-PHX-DWL, 2025 WL 2800052 (D. Ariz. Sept. 30, 2025) (denying motion for class certification in TCPA matter); *Revitch v. Citibank, N.A.*, No. 17-6907, 2019 WL 1903247 (N.D. Cal. Apr. 28, 2019) (same); *Tomeo v. CitiGroup, Inc.*, No. 13-4046, 2018 WL 4627386 (N.D. Ill. Sept. 27, 2018) (same).

Other substantial risks also loomed, including:

- Defendant intended to move for summary judgment, asserting, among other things, that it could reasonably rely on consent to call provided by its customers and that class members must individually demonstrate receipt of prerecorded voice messages. If this Court accepted Defendant's position, Ms. Keith's claims—and those of Settlement Class Members—would fail;

- Defendant further contended that non-customers could and do consent to receiving prerecorded calls and that for those persons, issues of prior express consent would defeat their claims;
- Defendant asserted constitutional defenses aimed at limiting or eliminating statutory damages;
- Defendant suggested that it maintains safeguards to ensure compliance with the TCPA. While Defendant vehemently disputes any liability, to the extent any violations did occur, Defendant argued that any violation of the TCPA was unintentional and would not support increased statutory damages; and
- Even had Ms. Keith succeeded on the merits and prevailed on appeal, a reduction in statutory damages was possible. *See Wakefield v. ViSalus, Inc.*, 51 F.4th 1109, 1125 (9th Cir. 2022) (vacating "the district court's denial of the defendant's post-trial motion challenging the constitutionality of the statutory damages award [under the TCPA] to permit reassessment of that question guided by the applicable factors").

The changing legal landscape under the TCPA also posed significant challenges. Relevant then, during the course of this litigation, the Supreme Court issued a series of opinions that revisited the appropriate level of deference courts are to give agency interpretations of statutes like the TCPA. *See*, *e.g.*, *McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 155 (2025) ("In an enforcement proceeding, a district court must independently determine for itself whether the agency's interpretation of a statute is correct. District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation."). Given as much, how courts will interpret the TCPA going forward is a large unknown that weighed on this litigation and had the potential to undermine Ms. Keith's claims.

At bottom, the result here was far from certain. After analyzing the serious risks inherent with TCPA litigation, Judge Holderman determined that an appropriate risk-adjusted fee for TCPA class settlements is an award of 36 percent of the net common fund, up to the first $10 million in recovery—exactly what Class Counsel seek here. *Capital One*, 80 F. Supp. 3d at 807. Given the presence of many of the same risks, the requested fee award is fair and reasonable and should be

approved. This is particularly so because the per-Settlement Class Member recovery here dwarfs that in *Capital One*. *See* 80 F. Supp. 3d at 789 (finding that $34.60 per person "falls within the range of recoveries in other TCPA actions[.]"). In other words, if counsel in *Capital One* earned a 36% fee on the first $10 million recovered where class members received less than $35 each, Class Counsel here have earned that same percentage fee for recovering many multiples more for participating Settlement Class Members.

**F. Class Counsel undertook substantial work to drive this case toward resolution.**

The caliber of Class Counsel's performance in completing the work necessary to achieve a desirable outcome here further underscores the reasonableness of the requested fee. As outlined in the Greenwald Decl., Class Counsel will have devoted two years to litigating this case without any payment, committing significant time and resources along the way, including: (a) conducting an investigation into the underlying facts regarding Ms. Keith's claims and class members' claims; (b) preparing a class action complaint; (c) researching the law pertinent to class members' claims and Defendant's defenses; (d) preparing the parties' Rule 26(f) report; (e) negotiating a protective order to facilitate the exchange of discovery; (f) preparing and serving written discovery requests, including requests for production, interrogatories, and requests for admission; (g) reviewing Defendant's responses and objections to written discovery requests and related documents produced by Defendant; (h) preparing for and taking two corporate representative depositions of Defendant pursuant to Rule 30(b)(6); (i) engaging in extensive meet-and-confer efforts regarding Defendant's discovery responses and document production; (j) preparing responses and objections to Defendant's discovery requests to Ms. Keith, and producing responsive documentation; (k) seeking third-party discovery through the issuance of two subpoenas; (l) negotiating with third parties over their responses to Ms. Keith's subpoenas, and reviewing responsive documents; (m) researching and preparing Ms. Keith's motion for class certification and appointment of class counsel; (n)

working with expert Carla Peak and producing her expert report; (o) preparing for and attending mediation in Chicago with mediator Seamus Duffy, including preparing a detailed mediation brief; (p) preparing and negotiating the parties' class action settlement agreement, along with the proposed class notices and claim forms; (q) negotiating with class administration companies to secure the best notice plan practicable; (r) researching and preparing Ms. Keith's motion for preliminary approval of the class action settlement, and counsel's declaration in support; (s) closely monitoring evolving TCPA case law and its potential impacts on this case; (t) closely monitoring decisions from the Federal Communications Commission and their potential impacts on this case, including rulemaking regarding prior express consent; (u) conferring with the class administrator to oversee the notice, claims, and administration process, as well as notice pursuant to the Class Action Fairness Act of 2005; and (v) repeatedly conferring with Ms. Keith throughout this case. Greenwald Decl., ¶ 74; *see also id.*, ¶¶ 41-65.

Without counsel's diligent efforts over more than 1.5 years, there would be no recovery for the Settlement Class. And while counsel's past efforts in this case were substantial, significant work remains. *See id.*, ¶ 75 (outlining additional tasks, including responding to class member inquiries, overseeing the notice and claims process, preparing Ms. Keith's motion for final approval, responding to objections, if any, preparing for and attending the final fairness hearing, and, if approved, overseeing the process of providing settlement payments to participating Settlement Class Members). Given the foregoing, the requested fee award is reasonable and should be approved.

In total, and after deducting certain time entries in an exercise of billing discretion, GDR attorneys have devoted 573.10 to this litigation, accumulating a lodestar of more than $369,000. *Id.*, ¶¶ 76-79. This investment of time is particularly significant because GDR is a small firm with only four attorneys. *Id.*, ¶ 83. As a result, the time spent on this case necessarily curtailed the firm's ability to work on other cases.

**G. Class Counsel are highly experienced consumer protection class litigators who leveraged that experience to obtain efficient, excellent results.**

Class Counsel bring significant experience litigating class actions filed under federal consumer protection statutes, including the TCPA. *See id.*, ¶¶ 10-40. Indeed, GDR has been appointed class counsel in dozens of class actions nationwide, having helped to recover more than $200 million for aggrieved class members. *Id.*, ¶¶ 11-12.

Through their extensive experience, Class Counsel have earned themselves stellar reputations in this practice area. Further, counsel's knowledge of, and experience with, TCPA class actions helped to bring about the $4.75 million common fund in an efficient manner. Where "Class Counsel's knowledge and experience . . . significantly contributed to a fair and reasonable settlement, this factor supports a request for a large amount of attorneys' fees." *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).

In the face of significant legal hurdles, Class Counsel and Ms. Keith obtained an excellent result for Settlement Class Members. To be sure, this settlement exceeds, on a per-potential class member basis, many similar and recently approved TCPA class action settlements. Specifically, dividing the Settlement Fund ($4,750,000) by 17,902 (the maximum number of potentially affected telephone numbers)[6] amounts to more than $265 per potential Settlement Class Member. And after accounting for attorneys' fees and expenses, each potential Settlement Class Member would receive "about $165," which "is higher than most similar TCPA class action settlements." ECF No. 30 at 5 (preliminarily approving settlement). *See also, e.g.*, *Miles*, 2023 WL 1794559 ($6.42 per potentially affected telephone number); *Williams v. Bluestem Brands, Inc.*, No. 17-1971, 2019 WL 1450090, at

[6] Importantly, this figure is the maximum number of *potential* Settlement Class Members. As noted, the parties estimate that the number of *likely* Settlement Class Members "is fewer than 6,500." ECF No. 27 at 4, § 4.2 (Class Action Settlement Agreement and Release). Dividing the $4.75 million fund by the 6,500 likely Settlement Class Members equals approximately $730 per person.

*2 (M.D. Fla. Apr. 2, 2019) ($7 per potential class member); *Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 227-28 (N.D. Ill. 2016) (just over $1 per person); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 WL 890566, at *3 (N.D. Ill. Feb. 27, 2015) (less than $5 per person).[7]

And, as this Court noted in granting preliminary approval, on a per-claimant[8] basis the recovery is expected to exceed numerous other recently approved TCPA class action settlements. ECF No. 30 at 5 (collecting cases); *see also Johnson*, 2025 WL 1909337, at *3 ("The per-claimant recovery of over $146 provides class members with monetary relief that exceeds other approved TCPA class action settlements."); *Daugherty*, 2025 WL 1618354, at *3 ("And notwithstanding, the settlement exceeds on a per-claimant recovery basis other recently approved TCPA class action settlements. Indeed, after deducting the cost of notice to potential settlement class members and claims administration, litigation costs and expenses, reasonable attorneys' fees, and an incentive award to Plaintiff, participating settlement class members who submitted approved claims will receive approximately $226 each. This far surpasses comparable figures in other approved TCPA class settlements."); *James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 WL 6908118, at *2 (M.D. Fla. Nov. 22, 2016) ("Discounting the statutory award by the probability that Chase successfully defends some class members' claims, a recovery of $50 per person fairly resolves this action.").

Moreover, the settlement provides Settlement Class Members with real monetary relief,

---

7 *See also, e.g.*, *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 WL 4708028 (N.D. Ga. Sept. 7, 2016) ($4.95); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63).

8 Because this case involves calls to alleged wrong numbers, the exact number of Settlement Class Members who received prerecorded voice messages from Defendant despite not having an account with Defendant, is unknown to the parties at this time. For this reason, Settlement Class Members must submit a short, straightforward claim form to participate in any recovery.

despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence, Inc.*, No. 12-174, 2013 WL 6498245, at *11 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that the class members have interest in individually controlling the prosecution of separate actions). Therefore, because of the settlement, Settlement Class Members will receive money they otherwise likely would have never pursued on their own. In sum, the settlement constitutes an objectively favorable result for Settlement Class Members, given the real risks involved, and amply supports an award of attorneys' fees in the amount of approximately 34.8% of the total common fund.

## II. This Court should approve the reimbursement of costs and litigation expenses in the amount of $11,234.01.

"It is well established that counsel who create a common fund like this one are entitled to the reimbursement of litigation costs and expenses, which includes such things as expert witness costs; computerized research; court reports; travel expense; copy, phone and facsimile expenses and mediation." *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014).

Here, Class Counsel incurred costs and litigation expenses in the total amount of $11,234.01, which includes mediation costs, court reporter costs, filing fees, travel expenses, and costs for service of process. *See* Greenwald Decl., ¶¶ 95-98 (outlining expenses).

These categories of expenses for which Class Counsel seek reimbursement are of the type routinely charged to paying clients in the marketplace and, therefore, are properly reimbursed under Rule 23. *See, e.g.*, *Lucas*, 2023 WL 3143816, at *2 (approving reimbursement of $10,332.75 in costs and litigation expenses in TCPA class action); *Leung*, 326 F.R.D. at 199, 203 (approving reimbursement of $52,458.90 in expenses in TCPA class action for costs including copying, legal research, and telephone charges); *see also* Fed. R. Civ. P. 23(h) ("In a certified class action, the

court may award reasonable attorney's fees and *nontaxable* costs that are authorized by law or by the parties' agreement.").

This Court accordingly should approve reimbursement of Class Counsel's litigation costs and expenses. To date, no Settlement Class Members have objected to such reimbursement.

**III. Ms. Keith's request for a service award in the amount of $15,000 is fair, reasonable, and supported by law.**

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *In re Broiler Chicken*, 2022 WL 6124787, at *4 (awarding multiple $15,000 service awards); *accord Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (affirming $25,000 service award); *Fellows v. Am. Campus Cmtys. Servs., Inc.*, No. 16-1611, 2018 WL 3056046, at *7 (E.D. Mo. June 20, 2018) ("Courts routinely grant service awards in connection with class action settlements to promote the public policy underlying class action litigation by encouraging individuals to vindicate rights on behalf of a others similarly situated."). "In determining the need for an award, the court can consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Leung*, 326 F.R.D. at 205 (approving service award).

Here, Ms. Keith took pride in protecting the interests of Settlement Class Members, and she spent considerable time pursuing their claims. Keith Decl., ¶¶ 32-36, 38-39, 42-46, 49-51. From the outset, Ms. Keith was dedicated to pursuing this matter as a class action rather than an individual case. *Id.*, ¶¶ 43-44. The end result—well over a year later—is the recovery of $4.75 million for Settlement Class Members, which will lead to significant cash payments to consumers who received prerecorded calls from Defendant.

Ms. Keith remained actively involved throughout this case and frequently communicated with her counsel for updates and strategic decisions. Greenwald Decl., ¶¶ 87-94. She responded to written discovery requests, searched for and produced responsive documents, and participated in the parties' mediation. *Id.*; Keith Decl., ¶¶ 35-36, 45. Moreover, like other class representatives, she was subjected to potential public scrutiny throughout the process. Keith Decl., ¶ 41. Indeed, Ms. Keith's telephone records were turned over to Defendant as part of the litigation. *Id.*, ¶ 40. What's more, Ms. Keith's efforts led to the substantial settlement at bar. Because the settlement amount is far more than in most TCPA class actions, Ms. Keith's successes should be acknowledged.

Given all of the foregoing, the requested service award of $15,000 is reasonable and should be approved. *See, e.g.*, *Head*, 2025 WL 226660, at *4 (approving $15,000 service award to TCPA class representative); *Charvat*, 2019 WL 5576932, at *10 ($25,000 TCPA service award for "endur[ing] several years of discovery, scrutiny, and inconvenience in pursuit of this case"); *Markos*, 2017 WL 416425, at *3 (approving service awards of $20,000 each in TCPA class action); *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV-00130-PJK, 2015 WL 5704016, at *2 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Prater*, 2015 WL 8331602, at *3 ($20,000 incentive award from a $6.75 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 WL 1399367, at *6 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to a TCPA class representative); *Martin*, 2014 WL 9913504, at *3 (approving a $20,000 service award to a TCPA class representative); *Allen v. JPMorgan Chase Bank, N.A.*, No. 13-8285, ECF No. 93 at ¶ 18 (N.D. Ill. Oct. 21, 2015) ($25,000 TCPA service award); *Abbott v. Lockheed Martin Corp.*, No. 06-701, 2015 WL 4398475, at *4 (S.D. Ill. July 17, 2015) (awards of $10,000 to $25,000 where "the Named Plaintiffs initiated the action, took on a substantial risk, and remained in contact with Class Counsel"); *Desai v. ADT Sec. Servs., Inc.*, No.

11-1925, ECF No. 243 at ¶ 20 (N.D. Ill. Feb. 27, 2013) ($30,000 awards).[9]

**Conclusion**

Ms. Keith and Class Counsel respectfully request that this Court grant their requests for (1) an award of attorneys' fees of $1,652,509.08; (2) reimbursement of costs and litigation expenses in the amount of $11,234.01; and (3) a service award of $15,000 for Ms. Keith for her dedicated efforts to the Settlement Class. To date, there are no objections to any of the foregoing.

Dated: May 27, 2026

/*s/ Michael L. Greenwald*
Michael L. Greenwald
James L. Davidson
GREENWALD DAVIDSON RADBIL PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com

*Class Counsel*

[9] The requested service award amounts to 0.31 percent of the recovery. In comparison, in *Guzman*, Chief Judge Pepper recently approved a service award in connection with a class action settlement "which represents about 5.4% of the common fund recovery." 2022 WL 2657261, at *6.